**In the Matter of Deborah A. Riga GARDNER, Respondent.**

**No. 45S00–1311–DI–768.**

Supreme Court of Indiana.

April 3, 2014.

*PUBLISHED ORDER APPROVING STATEMENT OF CIRCUM-STANCES AND CONDITIONAL AGREEMENT FOR DISCIPLINE*

Pursuant to Indiana Admission and Discipline Rule 23(11), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating agreed facts and proposed discipline as summarized below:

**Stipulated Facts:** From January 2000 to December 2003, Respondent served as Schererville Town Court Judge, where she heard cases involving traffic, minor drug and alcohol offenses, and small claims.

*Driving Classes.* In general, defendants charged with first-time traffic offenses could have their prosecution deferred if they took a defensive driving course. From January 2000 until October 2001, the driving courses were offered in Respondent's courtroom one Saturday each month, and each participant was required to pay a $25 fee to the driving school and a $114 fee to the Town of Schererville ("Town"). The driving school paid rent of $250 to the Town for each class held in the courtroom. Profits from the driving school went to the owner of the driving school.

In October 2001, Respondent created her own business called Diversified Educational Services ("DES") which offered the defensive driving courses. Respondent's father contracted with W.S.[1] to open a checking account in the name of DES, which Respondent and her father controlled. Respondent directed that the fees collected from defendants that she ordered to attend the driving school be deposited into the DES account. Between November 2001 and December 2003, people attending DES driving school paid fees totaling $29,600. W.S. was shown as the sole owner of the account to conceal Respondent's financial interest in DES. Respondent paid W.S. $3,800 from the DES account for his cooperation. Respondent did not disclose her financial interest in DES to the Town or to defendants charged with traffic offenses in her court.

In December 2001, Respondent stopped paying rent to the Town for DES's use of the courtroom for the driving classes. Between December 2001 and December 2003, DES conducted sixteen driving school classes for which no rent was paid to the Town.

*Counseling Program.* In general, young adults who were charged in the Schererville Town Court for the first time with minor alcohol or marijuana offenses were ordered by Respondent to participate in a counseling session called "Cross-

---

1. The relationship between Respondent and  W.S. is not disclosed.

roads." When the defendants completed the counseling and supervision requirements, the case would be dismissed.

From March 2001 through November 2001, the Crossroads counseling sessions were conducted by Addiction and Family Care, Inc. ("AFC"). The people attending the Crossroads sessions were required to pay $80 to AFC. The sessions were offered about once a month on a Saturday in the Schererville Town Court. Respondent required AFC to pay $150 rent per session to the Town for use of the courtroom. The profits from the program went to AFC owner N.F.

In December 2001, Respondent terminated the contract with AFC and assumed ownership of the Crossroads program the following month. Concealing her financial interest in Crossroads, Respondent continued to use the counselor who previously conducted the Crossroads sessions by AFC and continued to issue certificates of completion signed by N.F.

Between January 2002 and December 2003, twelve Crossroads sessions were held for approximately 175 defendants. Approximately $14,320 was collected from these defendants and deposited in Respondent's DES account. Respondent did not pay rent to the Town for the use of her courtroom for any of these Crossroads sessions.

*Criminal Conviction.* Respondent was charged on August 5, 2004, with several federal crimes based on actions while she served as a town judge. On June 12, 2006, the court accepted Respondent's guilty plea to four counts of "Mail Fraud for the Purpose of Executing a Scheme and Artifice to Defraud, Aiding and Abetting," in violation of 18 U.S.C. §§ 1341 and 1346. The district court delayed the sentencing to allow her to cooperate with the government and testify against another defendant on public corruption charges. On July 10, 2008, the district court sentenced her to concurrent 15–month sentences on each of the four counts, ordered her to pay restitution of $5,770.39 to the Town, and $6,350 to the State of Indiana–Lake County, and dismissed the remaining charges.

Based on these convictions, the Court entered an order of interim suspension on September 4, 2008, which is still in effect. *See Matter of Riga,* 894 N.E.2d 563 (Ind. 2008).

*Aggravating and mitigating facts.* The parties cite the following facts in aggravation: (1) Respondent's conduct demonstrates a dishonest and selfish motive in using her position as a judicial officer to engineer a scheme to profit above and beyond her judicial salary directly from the defendants who appeared before her; (2) Respondent's misconduct demonstrated a pattern of misconduct by her repeated actions over several years; (3) the defendants who participated in Respondent's driving and drug programs were particularly vulnerable, essentially having no choice whether or not to participate in Respondent's corrupt scheme.

The parties cite the following facts in mitigation: (1) Respondent has no prior discipline; (2) Respondent has cooperated with the Commission's investigation; (3) Respondent has paid the restitution ordered; (4) other penalties have been imposed upon Respondent for her misconduct, including a felony conviction and imprisonment; (5) Respondent volunteers a significant amount of time to organizations dedicated to philanthropic endeavors; (6) there has been extensive delay in these disciplinary proceedings, none of which is attributable to Respondent.

**Violations:** The parties agree that Respondent violated the following rules:

Ind. Professional Conduct Rule 8.4(b): "It is professional misconduct for a lawyer

to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

Ind. Judicial Conduct Canons (2003):

2A: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

2B: "A judge shall not lend the prestige of judicial office to advance the private interests of the judge...." 4A(1) and (3): "A judge shall conduct all of the judge's extra-judicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; ...

(3) interfere with the proper performance of judicial duties." 4D(1)(a) and (c): "A judge shall not engage in financial or business dealings that: (a) may reasonably be perceived to exploit the judge's judicial position; ... (c) tend to reflect adversely on impartiality or interfere with the proper performance of judicial duties."

**Discipline:** The parties propose the appropriate discipline is **a five-year suspension without automatic reinstatement.** The Court, having considered the submissions of the parties, now approves the agreed discipline.

For Respondent's professional misconduct, the Court **suspends Respondent from the practice of law in this state for a period of not less than five years without automatic reinstatement, effective immediately.** Respondent shall fulfill all the continuing duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4) and (18). Approval of a petition for reinstatement is discretionary and may be granted only if Respondent could meet the most stringent burden of proving by clear and convincing evidence all the requirements of Admission and Discipline Rule 23(4)(b), including without limitation that Respondent can safely be recommended to the legal profession, the courts and the public as a person fit to represent them and otherwise act in matters of trust and confidence; and that Respondent is genuinely remorseful for his/her misconduct.

The costs of this proceeding are assessed against Respondent.

The Clerk is directed to forward a copy of this Order to the parties or their respective attorneys and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this order to the Court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur.